532 S.E.2d 646

**Thomas W. KORZUN and Shirleen Korzun, Plaintiffs,**

v.

**CHANG–KEUN YI, Defendant.**

No. 26634.

Supreme Court of Appeals of West Virginia.

Submitted March 21, 2000.

Decided May 5, 2000.

Kelly R. Reed, Esquire, William L. Frame, Esquire, Wilson, Frame, Benniger & Metheney, Morgantown, West Virginia, Attorneys for Plaintiffs.

Charles E. Hurt, Esquire, Charleston, West Virginia, Attorney for Defendant.

SCOTT, Justice:

This case arises upon certified question from the United States District Court for the Northern District of West Virginia and presents the issue of whether a self-insured automobile rental company is an "insurance company" within the meaning of West Virginia Code § 56–3–31(h)(7) (Supp. 1999) for purposes of effecting service of process on behalf of a nonresident motorist driver. After examining the applicable statutory provisions, we conclude that the statutory definition of "insurance company" does include entities such as self-insured automobile rental companies and accordingly, answer the certified question in the affirmative.

I. Factual Background

Plaintiffs Thomas and Shirleen Korzun were injured in a two-vehicle accident that occurred in Morgantown, West Virginia, on June 28, 1995. Defendant Chang–Keun Yi, who was operating a rental vehicle that he had procured from The Hertz Corporation ("Hertz"), allegedly crashed into the Kor-

zun's vehicle. Plaintiffs filed a civil action predicated on negligence grounds in the Circuit Court of Monongalia County on April 16, 1997. Because Yi is a Korean national, the Korzuns were not successful in their efforts to serve Defendant personally. Plaintiffs attempted to effect service on Defendant Yi through the West Virginia Secretary of State's office under the provisions set forth in West Virginia Code § 56–3–31, the nonresident motorist statute. The Secretary of State was initially unsuccessful in its attempt to effect service of process by sending the necessary documents to South Korea, as the return receipt was returned unsigned. In a final attempt to effect service pursuant to the terms of West Virginia Code § 56–3–31(h)(7),[1] the Secretary of State sent a copy of the complaint to Hertz Claim Management.[2]

On July 15, 1997, Defendant Yi removed the action to federal court[3] and filed a motion to dismiss on the grounds that Korea does not permit service of process via the mail. The district court rejected this theory on substantive grounds[4] and the Fourth Circuit Court of Appeals dismissed Yi's appeal from this ruling on procedural grounds.[5] Defendant filed a motion for summary judgment on grounds that neither he nor any agent of his had received service of process by certified mail or any other means. On December 10, 1998, the district court dismissed the Korzuns' civil action for failure to obtain service of process within the 120–day period required under Rule 4(m) of the Federal Rules of Civil Procedure. The district court denied Plaintiffs' motion for an extension of time in which to effect service as to Yi.

On December 16, 1998, Plaintiffs filed the present civil action against Yi in the Circuit Court of Monongalia County. After service of process via the Secretary of State's office was ineffectual, the Korzuns filed the affidavit required by West Virginia Code § 56–3–31(g)[6] to obtain service against The Hertz Corporation. Yi removed the second action to federal court in March 1999 and filed a motion to dismiss for insufficiency of service of process on the grounds that Hertz is not an "insurance company" under West Virginia Code § 56–3–31 and the running of the applicable statute of limitations.[7]

By order entered on June 30, 1999, Judge Keeley certified the following question of law to this Court:[8]

Under West Virginia law, is a self-insured automobile rental company, which provides contractual indemnification to authorized operators of its vehicles up to the minimum financial responsibility limits required by West Virginia law, an "insurance company" under W.Va.Code § 56–3–31(h)(7) upon whom process may be effect-

---

1. This statutory provision permits service on a defendant's insurance company when service of process cannot be effected through the secretary of state's office.

2. Plaintiffs subsequently learned that Hertz Claim Management was the third party claims administrator for The Hertz Corporation and not the issuer of Yi's insurance on his rental vehicle. When Plaintiffs filed the underlying civil action, the second lawsuit which they instituted against Defendant Yi, they properly requested that the Secretary of State serve The Hertz Corporation as Defendant's insurer.

3. The grounds asserted for removal were diversity and amount in controversy.

4. After looking into the mechanisms for effecting service on Korean nationals, the district court determined that, while service via letters rogatory was necessary if enforcement of a U.S. judgment would be sought, other means of service of process were nonetheless proper.

5. The Fourth Circuit dismissed the appeal for Yi's failure to seek certification for review of the interlocutory order under 28 U.S.C. § 1292(b) (1994).

6. The affidavit must state that the defendant is not a state resident; that process directed to the secretary of state's office was sent by registered or certified mail, return receipt requested; that the registered or certified mail was returned to the secretary of state as refused, unclaimed, or no available forwarding address; and that the secretary of state has fully complied with the statutory provisions concerning the manner in which it is to attempt to effect service. See W.Va.Code § 56–3–31(g), (e).

7. See W.Va.Code § 55–2–12 (1994).

8. The district court did not answer the certified question that it presented to this Court.

ed on behalf of a non-resident motorist driver of a rented vehicle?

## II. Discussion

In this case of first impression, we are asked to determine whether a self-insured rental company qualifies as an "insurance company" for the purposes of effecting service of process on a nonresident driver under West Virginia Code § 56–3–31. The terms of that statute provide for the appointment of the secretary of state as the agent or attorney-in-fact for purposes of accepting service of process for lawsuits involving nonresident drivers. When the typically-employed mechanism for effecting service of process on nonresident drivers, which involves serving the complaint via the U.S. mail through use of a return receipt, is ineffectual, there is one final method to obtain service. The alternate procedure, provided for in subsection (g), permits the defendant's insurance company to be served with process upon the filing of an affidavit demonstrating that other means of effecting service have not been successful.[9] *See Hartwell v. Marquez,* 201 W.Va. 433, 440–42, 498 S.E.2d 1, 8–10 (1997) (upholding service of process on defendant's insurer as non-violative of Due Process and discussing how service on insurer can only be utilized upon demonstration of failed efforts to effectuate service through statutorily-provided procedures).

Defendant does not challenge Plaintiffs' failure to properly comply with the provisions set forth in West Virginia Code § 56–3–31. Instead, Yi argues that a self-insured automobile rental company such as Hertz does not fall within the definitional ambit of an "insurance company," as those terms are defined under the statute.[10] Subsection (h)(7) defines an "insurance company" as "any firm, corporation, partnership or other organization which issues automobile insurance." W.Va.Code § 56–3–31(h)(7).

As support for his position, Defendant Yi maintains that, because Hertz does not issue insurance policies, the car rental agency is necessarily precluded from qualifying as an "insurance company." We find this argument untenable as the statutory definition is not stated in terms of requiring the issuance of insurance *policies* as a prerequisite to qualification as a statutory "insurance company." Moreover, as Plaintiffs observe, this Court's recent pronouncements concerning self-insurance in *Jackson v. Donahue,* 193 W.Va. 587, 457 S.E.2d 524 (1995), suggest that inclusion of self-insurers such as Hertz as "insurance companies" is consistent with the underlying rationale for authorizing companies to be self-insurers.

In *Jackson,* this Court recognized that the option to self-insure " 'is a privilege, and it is unimaginable [that] the legislature intended those to whom [West Virginia] grants this privilege would then be able to use it as a shield against liability to the public under circumstances where liability insurance would be required to pay.' " *Id.* at 594, 457 S.E.2d at 531. This Court made clear in *Jackson* that self-insurers are no different than third-party insurers with respect to the insurance coverage they provide.[11] Pivotal to our ruling in *Jackson* was acknowledgment of the following tenet: " '[T]he fact that the legislature permits companies to formulate the most efficient insurance coverage should not be misconstrued as a device to avoid liability by the self-retention of risk.' " *Id.* at 592, 457 S.E.2d at 529 (quoting *Hillegass v. Landwehr,* 176 Wis.2d 76, 499 N.W.2d 652, 655–56 (1993)).

---

**9.** *See supra* note 6.

**10.** In an attempt to remove self-insurers from the reaches of West Virginia Code § 56–3–31(g), Defendant devoted much of his allotted time during the oral argument of this case to characterizing a contract of self-insurance as an indemnification agreement. This attempt is unavailing as the self-insurance contract at issue was properly framed to meet the requirements of this state's insurance laws and the distinctions between indemnification and liability contracts have no bearing on the issue before us.

**11.** In *Jackson,* this Court held that a foreign commercial trucking corporation, which was granted authority by the PSC to self-insure, had to provide the same amount of minimal insurance coverage as required by the West Virginia motor vehicle omnibus statutes and the state's financial responsibility statute for liability insurance contracts. 193 W.Va. at 593–94, 457 S.E.2d at 530–31.

None of the cases cited favorably by Defendant are apposite, either factually or legally.[12] At issue in *State Farm Mutual Automobile Insurance Co. v. Bogart*, 149 Ariz. 145, 717 P.2d 449 (1986), *superseded by statute as stated in Consolidated Enters., Inc. v. Schwindt*, 171 Ariz. 452, 831 P.2d 828 (Ct. App.1991), was whether the payment of the full amount of coverage provided under Hertz's car rental contract triggered excess insurance coverage under the driver's individual policy or his employer's policy. After observing that under Arizona law "[a] self-insured car rental agency is treated as primarily responsible for liability arising from the use of its rented cars," the Supreme Court of Arizona concluded that " 'other insurance' clauses are not triggered by the existence of primary, self-insured responsibility.' " 717 P.2d at 454. Defendant cites the Arizona court's statements that a " 'self-insurer is not an insurer' " and " '[a] self-insurer does not insure liability other than its own' " without benefit of any contextual references. *Id.* (citing *Orkin Exterminating Co. v. Robles*, 128 Ariz. 132, 624 P.2d 329, 331 (Ct.App.1980)) (emphasis omitted). These pronouncements were made solely in connection with determining whether the availability of self-insurance activated the "other insurance" clauses of the two policies at issue. Neither the holding reached in *Bogart*, nor the dicta cited by Defendant, has any relevance to the issue of statutory interpretation under consideration.

Just as inapplicable is the decision in *Cordova v. Wolfel*, 120 N.M. 557, 903 P.2d 1390 (1995), in which the New Mexico Supreme Court examined whether a self-insured automobile rental company was liable for the negligent acts of an unauthorized driver pursuant to the state's mandatory financial responsibility act. Preferring to emphasize the New Mexico Supreme Court's rejection of self-insurance as a "sub-set of insurance," Defendant Yi omitted entirely from his discussion of the *Cordova* case a critical difference between New Mexico's and West Virginia's respective financial responsibility laws. *Id.* at 1392. Unlike West Virginia, New Mexico specifically exempts self-insured motor vehicles from the provisions of its financial responsibility act. 903 P.2d at 1393. Based solely on the inapplicability of these laws to self-insured vehicles, the New Mexico Supreme Court concluded that insurance protection was not afforded to an unauthorized driver of a self-insured rental vehicle. *Id.* While Defendant cites *Cordova* for the purpose of iterating the distinctions drawn by the court in differentiating self-insurance from insurance,[13] those distinctions have no impact on the limited issue of whether the terms "insurance company," as used in this state's nonresident motorist statute, encompass both issuers of typical insurance and issuers of self-insurance.

The final case relied upon by Defendant is *Quick v. National Auto Credit*, 65 F.3d 741 (8th Cir.1995), *cert. denied*, 516 U.S. 1153, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996). In considering and rejecting the argument that a company's status as a self-insurer was determinative of the applicability of a bad faith cause of action, the court commented that "[t]he Missouri Supreme Court has recognized ... that a self-insurer does not automatically assume all the rights and duties that would exist under an insurance policy." *Id.* at 745. Rather than resolving the liability issue solely on the basis of the self-insurer's status, the court looked to the policy

---

**12.** Not one of the cases cited by Defendant involves any comparable definition of an "insurance company," as delineated in West Virginia Code § 56–3–31(h)(7). The common thread in these cases is inclusion of a statement, in dicta, that differentiates self-insurance from insurance. The distinctions between these two types of insurance, taken clearly out of context, provide no assistance to this Court in resolving the question of statutory interpretation before us. *See, e.g., Champlain Cas. Co. v. Agency Rent–A–Car, Inc.*, 168 Vt. 91, 716 A.2d 810, 813 (1998) (rejecting analytical focus on whether self-insurance can be labeled as insurance as "unhelpful" to resolution

of coverage issue and articulating alternate test of examining "whether the *relationship* between the self-insurer and the tortfeasor can be described as insurance") (emphasis supplied).

**13.** Notwithstanding the New Mexico Supreme Court's ruling in *Cordova*, the court acknowledged that "insurance principles may sometimes apply to self-insurance by way of analogy" and further that, "there may be situations where it is appropriate to apply the provisions of the MRFA [Mandatory Financial Responsibility Act] to self-insurers by analogy." 903 P.2d at 1392, 1393.

language at issue to determine whether the self-insurer had "reserved to itself the exclusive right to accept an offer to compromise a claim and to settle a dispute." *Id.* While Yi cites *Quick* as yet another case illustrative of the differences between self-insurance and insurance, that decision, like the others he relies upon, did not involve, even tangentially, the issue of whether a self-insurer can fall within the definitional language of a statutory provision aimed at permitting insurance companies to accept service on behalf of nonresident motorists.

■ What is solely decisive of the issue before us is the language of the statutory definition of "insurance company." Contrary to the view advanced by Yi, nothing in the definition either requires or suggests that an "insurance company" must issue an actual *policy* of insurance to come within the terms of that definition. It is axiomatic that statutory provisions which are clear and unambiguous must be given full force and effect. *See* Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). Finding no ambiguity concerning the definitional language of "insurance company," we conclude that a self-insured automobile rental company qualifies as an "insurance company" for purposes of accepting service of process on behalf of a nonresident motorist driver pursuant to the provisions of West Virginia Code § 56–3–31. *Cf. Cincinnati Ins. Co. v. Hertz Corp.,* 776 F.Supp. 1235, 1239–40 (S.D.Ohio 1991) (rejecting Hertz's claim that it was not an "insurer" under Nevada's insurance laws where "insurer" defined to include "every person engaged as principal and as indemnitor surety or contractor in the business of entering into contracts of insurance"). Accordingly, we answer the certified question in the affirmative.

Our decision, while reached without reference to the policy reasons advanced by Plaintiffs, nonetheless comports with the same objectives discussed in *Jackson.* In reaching our holding in *Jackson,* this Court considered the fact that "federal and state statutory and regulatory schemes concerning self-insurance … have for their purpose the protection of the public." 193 W.Va. at 593, 457 S.E.2d at 530. Similarly, the enactment of subsection (g), which permits service to be effected on a nonresident defendant's insurer, also stemmed from concerns rooted in protecting this state's citizenry in the event of a vehicular accident with a nonresident driver.[14] *See* W.Va.Code § 56–3–31(g). While our interpretation of the phrase "insurance company" was reached independently of such public protection objectives, legislative inclusion of self-insured automobile rental companies within such definition clearly serves the public interest.

Having answered the certified question in the affirmative, this case is dismissed.

Certified question answered.

---

**14.** We observe that, if the contractual terms between Hertz and its lessee, here Defendant Yi, fall short of providing for the minimal amounts of insurance required under this state's financial responsibility laws, the leased vehicle could not be operated lawfully on our roads. *See* W.Va. Code §§ 17D–4–2, –12(b)(2) (1996). The parties in the case at bar have treated the leased vehicle as being properly insured under our statutes.